# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DARRELL THOMPSON, )
 )
              Plaintiff, )
 ) CIVIL ACTION
v. )
 ) No. 12-2555-JWL
CAROLYN W. COLVIN,[1] )
Acting Commissioner of Social Security, )
 )
              Defendant. )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding the Commissioner's evaluation of Listing 12.05C unreviewable, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I. Background**

Plaintiff applied for SSD and SSI benefits alleging disability beginning July 20, 1965.[2] (R. 24, 146-60). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. He alleges that the Administrative Law Judge (ALJ) erred in evaluating Listing 12.05C at step three of the Commissioner's five-step sequential evaluation process, that Plaintiff does not possess the reading and writing skills necessary to perform the jobs identified by the vocational expert, and that the ALJ failed to obtain an explanation for alleged conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than

---

[2]The court notes that both of Plaintiff's applications--for SSD benefits and for SSI benefits--allege disability beginning on July 20, 1956 which is Plaintiff's date of birth. (R. 146, 154). Nevertheless, the ALJ specifically found that Plaintiff alleged disability beginning on July 20, 1965 "when he would have been nine years old." (R. 26). Plaintiff does not allege error in this finding, but the Commissioner may address it, if necessary, on remand.

2

a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Remand is necessary because the evaluation whether Plaintiff's condition meets or equals the severity of Listing 12.05C is unreviewable by the court. Because the case must be remanded, Plaintiff may present his arguments regarding the vocational expert's testimony to the Commissioner on remand.

## II. Listing 12.05C

At the hearing, Plaintiff's attorney presented his theory of the case, arguing that Plaintiff's condition meets Listing 12.05C for mental retardation because he had undergone psychological testing which produced IQ scores of which the lowest score was

70, and that Plaintiff "has a life long problem with a learning disorder, with extremely low cognitive, very low cognitive functioning." (R. 42).

### A. Applicable Legal Standard

The "Listing of Impairments" describes the severity of certain impairments that the Commissioner considers disabling. 20 C.F.R. §§ 404.1525(a), 416.925(a); see also, 20 C.F.R., Pt. 404, Subpt. P, App. 1. If plaintiff's condition meets or medically equals the severity of a listed impairment, his impairment is conclusively presumed disabling. Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled"). However, plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing." Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)).

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled

5

regardless of their vocational background." Yuckert, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

Listing 12.05C provides:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05.

Listing 12.05 is somewhat different than the other listings for mental disorders. Id., § 12.00A. The listing contains a diagnostic description of mental retardation (introductory paragraph) and four sets of criteria describing listing-level severity (Paragraphs A through D). 20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 12.00A, 12.05(A-D). Paragraphs A through D provide four distinct and independent ways in which an individual having significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period might satisfy the criteria of Listing 12.05. Id.; McKown v. Shalala, No. 93-7000, 1993 WL 335788, *1 (10th Cir. Aug. 26, 1993). To meet the listing, a claimant must show that his condition

6

satisfies <u>both</u> the diagnostic description of mental retardation <u>and</u> any one of the four severity criteria. <u>Id.</u>, § 12.00A.

The regulations provide that where verbal, performance, and full scale IQ scores are derived from a test, the lowest score of the three will be used when considering Listing 12.05. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00D(6)(c). If the claimant has an additional physical or mental impairment(s) which is "severe" within the meaning of 20 C.F.R. §§ 404.1520(c), 416.920(c), it will be considered to impose an additional and significant work-related limitation of function satisfying that criterion of Listing 12.05C. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00(A); <u>see also</u>, <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352-53 (10th Cir. 1997) (reaching the same conclusion before the regulations were changed in 2000 to specify the equivalence between "severe" impairments and "additional and significant work-related limitation of function."). Based upon the principles discussed above, to meet or equal Listing 12.05C, a claimant must show that three criteria are met: (1) evidence of onset of mental retardation before age twenty-two (deficits in adaptive functioning initially manifested during the developmental period), (2) a valid IQ score of 60 through 70, and (3) a severe physical or mental impairment in addition to mental retardation.

### B. The ALJ's Findings

In the decision here, the ALJ discussed Plaintiff's intellectual functioning and his mental evaluation by a psychologist, Mitchell R. Flesher, Ph.D., J.D. The court quotes the relevant portions of the decision in their entirety:

Finally, the "paragraph C" criteria of listing 12.05 are not met because the
claimant does not have a valid verbal, performance, or full scale IQ of 60
through 70 and a physical or other mental impairment imposing an
additional and significant work-related limitation of function. At the
hearing, the claimant's representative argued that the claimant's impairment
meets or equals 12.05C based on the findings of the Vocational
Rehabilitation Counselor's opinion related to the claimant's Verbal IQ of 70
(Ex. 2F). The claimant's representative argued that 12.00(D)(6)(c) notes
the lowest of the IQ scores should be used in assessing this listing. While I
note that 12.00(D)(7)(c)[3] indicates the lowest score should be utilized, and
the Vocational Rehabilitation Counsel found a Verbal IQ score of 70, I also
note that this score must be taken in conjunction with the requirements [of]
12.05 itself. In regard to whether the findings of the Vocational
Rehabilitation Counselor is [sic] sufficient to determine whether the
claimant meets listing 12.05, I note SSR 96-5p which requires the
Commissioner to consider medical opinions in regard to this issue. As
noted in that ruling, the decision as to whether a listing is met or equaled is
reserved to the Commissioner. Additionally, in order for an impairment to
equal a listing there must be medical evidence showing this fact (SSR 96-
5p). I further note that listing 12.05 instructs that the listing applies if the
evidence demonstrates or supports onset of the impairment before age 22.
As noted later in this decision, there is no evidence of record to support a
finding prior to the claimant attaining the age of 22. I find the listing is not
met or equaled.

(R. 28-29).

The claimant was diagnosed with borderline intellectual functioning (Ex.
4F). The claimant has a full-scale IQ of 77 (Ex. 2F). He has been
described by his doctors as functionally illiterate (Ex. 3F). The claimant
testified he cannot read. The record indicates the claimant completed 8th
grade and can read, although on a low level (Ex. 2F). His intellectual

---

[3]Section 12.00(D)(7) of the Listing of Impairments is not further subdivided.
Moreover, that section addresses "Personality measures and projective testing
techniques," rather than intelligence tests. 20 C.F.R., Pt. 404 Subpt. P, App. 1
§ 12.00(D)(7). Section 12.00(D)(6)(c), "Intelligence tests," provides that "where more
than one IQ is customarily derived from the test administered, . . . we use the lowest of
those in conjunction with 12.05." Therefore, the court finds that the reference provided
by the ALJ is a typographical error, and the ALJ intended to cite 12.00(D)(6)(c).

8

> functioning is borderline (Ex. 2F). The claimant testified he was able to sign his name. He also testified and the record notes that he was never in special education during school. He testified he failed third and fifth grades. The claimant is able to pay his bills and manage his own money and tests at a third grade math level (Ex. 2F). I note the record contains no school records or any records for that matter prior to 2006 relating the history of this severe impairment. I have considered the claimant's Borderline Intellectual Functioning impairment and have included non-exertional limitations to accommodate that impairment in the residual functional capacity outlined in this decision.

(R. 30).

> The claimant was evaluated by Mitchell R. Flescher,[4] Ph.D., J.D. on October 21, 2008 (Ex. 2F). Dr. Flescher noted the claimant denied any prior history of mental health counseling or use of psychotropic medication (Ex. 2F/3). Dr. Flescher had the claimant complete the Wide Range Achievement Test- Revision 3 (WRAT-3). Dr. Flescher noted that the claimant's scores on this test revealed his reading, spelling, and arithmetic skills were within the extremely low range of functioning. Dr. Flescher also had the claimant complete the Wechsler Adult Intelligence Scale - Third Edition (WAIS-III). He noted a full scale IQ of 77 (Ex. 2F/3). The results indicated that the claimant's overall intellectual functioning fall[s] within the Borderline range. Dr. Flescher opined that the claimant's scores reflected his ability to process information visually, reason without use of words, and engage in activities that require planning and organization (Ex. 2F/4). Dr. Flescher opined that the skills the claimant would retain would be those related to nonverbal abstract reasoning, visuospatial/constructional skill, and visual scanning and integration (Ex. 2F). Dr. Flescher suggested that the claimant receive assistance identifying employment opportunities as well as accommodations to compensate for his learning disability. Dr. Flescher also noted that the claimant would likely benefit from psychiatric consultation to determine the need for psychotropic medications and

---

[4]Consistently throughout the decision, the ALJ refered to this individual as Dr. Flescher, but the report to which he cites reveals that the individual is "Mitchell R. Flesher." (R. 319). The court will utilize the correct spelling of the name, but where it quotes the decision, it uses the name given in the decision. The reader must remember that either spelling refers to the same individual.

>counseling (Ex. 2F). I give the opinion of Dr. Flescher significant weight in
>this decision.

(R. 30-31).

In addition to Plaintiff's intellectual functioning, whether borderline intellectual functioning or mental retardation, the ALJ found that Plaintiff has three other severe impairments: anxiety related disorder, substance abuse disorder, and mild degenerative disc disease. (R. 27). Therefore, Plaintiff's condition meets the third criterion of Listing 12.05C as described above--a severe physical or mental impairment in addition to mental retardation–and what remains at issue is whether the first two criteria of Listing 12.05C ((1) evidence of onset of mental retardation before age twenty-two (deficits in adaptive functioning initially manifested during the developmental period), and (2) a valid IQ score of 60 through 70) are met.

### C.    Analysis

Plaintiff claims that the ALJ erred in evaluating Listing 12.05C because he failed to use Plaintiff's lowest IQ score and because he erroneously concluded there was no evidence to support a finding of mental retardation manifested before age 22. The decision is not clear whether the ALJ used an IQ score of 70 in considering whether Plaintiff meets Listing 12.05C, and if so, it is not clear whether he found that IQ score to be valid. Therefore, the court cannot determine whether the ALJ properly considered Listing 12.05. Moreover, the ALJ erred in finding no record evidence to support onset of mental retardation before age twenty two. Remand is necessary for the ALJ to consider

10

Listing 12.05C properly, to explain his findings properly, and to point to record evidence supporting those findings.

The court begins its discussion with consideration of the second criterion--whether the evidence establishes a valid IQ score of 60 through 70.  As quoted above, the ALJ stated that "the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  (R. 28).  Because the ALJ found that Plaintiff has three other severe impairments; anxiety related disorder, substance abuse disorder, and mild degenerative disc disease; there can be not doubt that the ALJ here found that Plaintiff does not have a valid verbal, performance, or full scale IQ of 60 through 70.  However, the ALJ recognized Plaintiff's counsel's argument at the hearing that the "Vocational Rehabilitation Counselor's opinion" at Exhibit 2F showed a verbal IQ of 70, and the ALJ also stated that the "Vocational Rehabilitation Counsel <u>found a Verbal IQ score of 70</u>."  (R. 28) (emphasis added) (citing Ex. 2F).

The fact that the ALJ stated that the Voc Rehab Counsel <u>found a Verbal IQ score of 70</u> might be understood to suggest that he found the second criterion is met.  However, the ALJ made absolutely no finding of whether that IQ score was valid.  Moreover, the ALJ's evaluation of the medical opinion at Exhibit 2F is very confusing.  It is true that Plaintiff's counsel stated that Exhibit 2F is the report of a "consultative psychological examination not by Social Security, but by Voc Rehab to assess Mr. Thompson's possible readiness for employment."  (R. 42).  Yet, when the ALJ refered to the author of the

11

opinion as "the Vocational Rehabilitation Counselor," and "Vocational Rehabilitation Counsel," it is ambiguous whether the ALJ considers the author of the report to be a therapist, a psychologist, or an attorney. If one assumes, as did Plaintiff, that the ALJ referred to the author as "counselor" because he viewed the author as a therapist, not as a psychologist, then one must also assume that the ALJ regarded the author as someone who is not an "acceptable medical source" within the meaning of the regulations, and his opinion regarding IQ score is, therefore, not a "medical opinion," and may not be relied upon to support a finding that a listing is met or equaled.

But, going one step farther, the ALJ's reference to the author of the report as "counselor" and "counsel," might be understood to suggest that the ALJ viewed the author as an attorney rather than a psychologist. If such is the case, the author of the report once again is not an "acceptable medical source," his opinion is not a "medical opinion" and it may not be relied upon to support a finding that a listing is met or equaled. Either of these scenarios might be supported by the fact that the author of the report is shown to be "Mitchell R. Flesher, Ph.D., J.D." (R. 319). However, in his Step Three discussion of this report, the ALJ refers to the author of the report as "Vocational Rehabilitation Counselor," and "Vocational Rehabilitation Counsel," but does not name him or state his qualifications. (R. 28). Later in the opinion, the ALJ discusses Exhibit 2F specifically, and names the evaluator as "Mitchell R. Flescher, Ph.D., J.D." (R. 30), but he never suggests that Dr. Flesher is the individual earlier referred to as "Vocational Rehabilitation Counselor," and "Vocational Rehabilitation Counsel."

12

The confusion is further heightened by the fact that after his Step Three discussion, the ALJ stated that "claimant has a full-scale IQ of 77" (R. 30) (citing Ex. 2F), stated that Dr. Flesher "noted a full scale IQ of 77," and purported to accord "significant weight" to Dr. Flesher's opinion. (R. 31) (citing Ex. 2F/3 (R. 321)). When considered together with the fact that the ALJ referred to the IQ of 70 as "the Vocational Rehabilitation Counselor's opinion related to the claimant's Verbal IQ of 70," and stated that "the Vocational Rehabilitation Counsel found a Verbal IQ score of 70," it begins to appear that the ALJ discounted the IQ of 70. If that is the case, he did not state any reason grounded in the evidence for discounting the IQ of 70 or for finding that the score was not valid. Based upon this discussion and consideration of the decision at issue, it is apparent that the court is simply unable to review the decision and discern the holding, if any, of the ALJ with regard to the second criterion of Listing 12.05C. Remand is necessary for the Commissioner to determine whether that criterion is met and to provide an evidentiary basis for that determination such that the court will be able to decide whether the correct legal standard was applied and whether substantial record evidence supports the determination.

The court finds that it is also appropriate to review here the ALJ's consideration of the first criterion of Listing 12.05C--evidence of onset of mental retardation before age twenty-two (deficits in adaptive functioning initially manifested during the developmental period). As quoted above, the ALJ found that "there is <u>no evidence</u> of record to support a finding [of onset of the impairment] prior to the claimant attaining the age of 22." (R. 29)

13

(emphasis added). This finding is belied by two factors borne out by the record evidence as noted by Plaintiff.

First, IQ is relatively constant through life and an IQ score after age twenty-two constitutes evidence of an individual's IQ being equivalent thereto before age twenty-two. See, e.g., Luckey v. Dep't of Health & Human Serv., 890 F.2d 666 (4th Cir. 1989) ("in the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ had remained relatively constant."); Sird v. Chater, 105 F.3d 401 (8th Cir. 1997) (citing Luckey); and Hodges v. Barnhart, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (adopting a presumption that IQ remains constant absent evidence of a change in intellectual functioning)). The Tenth Circuit has not directly addressed the issue whether mental retardation may be presumed to have manifested during the developmental period. However, it has noted that circuit courts have liberally construed the early manifestation requirement whereby a claimant "is not required to affirmatively prove that he was mentally retarded prior to reaching the age of twenty two so long as there was no evidence that claimant's IQ had changed." McKown, 1993 WL 335788, at *3. Here, if Plaintiff establishes a valid IQ score of 60 to 70, it may be presumed he was mentally retarded prior to age 22 unless the evidence shows no deficits in adaptive functioning during the developmental period. Such a rationale must be addressed in the decision, and the court will not consider the Commissioner's rationale presented for the first time to this court.

Finally, Plaintiff also points to record evidence that he had deficits in adaptive functioning before age 22. He argues that he had difficulties in school, failed two grades, and had difficulty reading and writing. Again, although the Commissioner argues that this evidence does not necessarily equate with mental retardation, the ALJ found <u>no record evidence</u> to support a finding of deficits in adaptive functioning before age 22. The evidence to which Plaintiff points demonstrates the error in the ALJ's finding, and the court may not rely on the Commissioner's post hoc rationalizations to affirm the decision. <u>Knipe v. Heckler</u>, 755 F.2d 141, 149 n.16 (10th Cir. 1985). Nor may the court create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1263 (10th Cir. 2005).

As demonstrated above, the ALJ erred in his evaluation of whether Plaintiff's condition meets or equals Listing 12.05C. Remand is necessary for the Commissioner to perform a proper evaluation and explain the evidentiary basis for her decision.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 23rd day of December 2013, at Kansas City, Kansas.

                                                s:/ John W. Lungstru
                                                **John W. Lungstrum**
                                                **United States District Judge**